IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENNY R. ELSTUN,                                       6:12-cv-01811-MA

                    Plaintiff,                         OPINION AND ORDER

          v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

MAX RAE
P.O. Box 7790
Salem, Oregon 97303

        Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

GERALD J. HILL
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, Washington 98104-7075

        Attorneys for Defendant


1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Penny R. Elstun, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and supplemental security income (SSI) disability benefits under Title XVI of the Act.  See 42 U.S.C. §§ 401-434, 1381-1383f.  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).  For the reasons set forth below, I reverse the final decision of the Commissioner and remand for further proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

Plaintiff filed prior applications for SSI and DIB on October 3, 2007, which were denied initially and upon reconsideration. Plaintiff then protectively filed the instant applications for DIB and SSI on April 13, 2009, alleging disability due to "[l]ower back and both legs and mental health problems."  Tr. 205.  Her applications were again denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on June 9, 2011, at which plaintiff was represented by counsel and testified.  Vocational Expert (VE) Nancy Bloom was also present throughout the hearing and testified.

On August 19, 2011, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act.  After the

2 - OPINION AND ORDER

Appeals Council declined review of the ALJ's decision, plaintiff timely filed a complaint in this court.

### FACTUAL BACKGROUND

Born on August 8, 1974, plaintiff was 32 years old on the alleged onset date of disability and 36 years old on the date of the hearing. Plaintiff has a high school diploma with some college education, and past relevant work as a Caregiver. Tr. 35, 209.

Plaintiff alleges her conditions became disabling on August 9, 2006. Tr. 149. In addition to her hearing testimony, plaintiff submitted an Adult Function Report. Tr. 229-36. Plaintiff's mother, Jerrie Lynn Elstun submitted an Adult Third Party Function Report. Tr. 239-46. Also of record are an Adult Function Report submitted by plaintiff for her 2007 application, as well as a Third Party Function Report submitted by plaintiff's then-boyfriend, Arvel Ray Monroe filed in relation to the prior application. Tr. 174-81, 185-92.

In addition to a number of other examining physician reports and Residual Functional Capacity Assessments of record that are not directly at issue in this appeal, the record contains multiple chart notes and letters addressed to various agencies about plaintiff's conditions from plaintiff's treating nurse practitioner, Julie Slind-Hull, FNP.

///

///

3 - OPINION AND ORDER

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the alleged onset date, August 9, 2006. See 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.; Tr. 24.

At Step Two, the ALJ found that plaintiff's major depressive disorder, anxiety, degenerative disc disease, and history of seizures were severe impairments. See 20 C.F.R. §§ 404.1520(c), 416.920(c); Tr. 24-25.

At Step Three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 25-26.

The ALJ found that plaintiff has the residual functional capacity (RFC) to perform light work, but can only perform unskilled work with no public interaction; can only occasionally crawl, climb, crouch, or kneel; cannot perform fine precision work; and cannot work in environments with exposure to unprotected heights, moving machinery, or commercial driving.  Tr. 26-35.

At Step Four, the ALJ found that plaintiff is unable to perform her past relevant work as a Caregiver.  See 20 C.F.R. §§ 404.1565, 416.965; Tr. 35.

At Step Five, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including Microfilm Document Preparer, Conveyor Line Bakery Worker, and Mail Clerk.  See 20 C.F.R. §§ 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a); Tr. 35-37.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises eight issues on appeal.  First, plaintiff asserts that the ALJ erred in failing to reopen plaintiff's 2007 application.  Second, plaintiff argues that the ALJ erroneously omitted plaintiff's L5 radiculopathy as a severe impairment at Step Two.  Third, plaintiff claims that the ALJ erroneously discredited her testimony.  Fourth, plaintiff argues that the ALJ cited inadequate reasons for rejecting the opinion of Ms. Slind-Hull.

Fifth, plaintiff maintains that the ALJ erroneously discredited Ms. Elstun and Mr. Monroe's lay testimony without discussion. Sixth, plaintiff asserts that the ALJ failed to properly consider a disability finding by a Vocational Rehabilitation Servcies (VRS) official. Seventh, plaintiff claims the ALJ made miscellaneous errors in formulating the RFC. Finally, plaintiff maintains that the ALJ failed to carry his burden at Step Five because two of the three jobs cited by the ALJ require a General Education Development (GED) level beyond plaintiff's capacity.

### STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.   42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for

that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.  Reopening of the 2007 Application

Plaintiff first argues that the ALJ erred in failing to reopen her 2007 disability application.  This argument is without merit. In plaintiff's prior application, she alleged an onset date of August 12, 2006 - three days after the alleged onset date in the instant application.  In adjudicating the instant application, the ALJ considered evidence and determined whether plaintiff qualified for disability during a period dating back to the alleged onset dates of the instant application, which preceded that of the prior application.  Thus, the ALJ *de facto* reopened the prior application because she adjudicated plaintiff's disability through the alleged onset date of the prior application, and did not ascribe any preclusive effect to the denial of plaintiff's prior application. See Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995).  The ALJ did not err in failing to reopen plaintiff's prior application.

### II.  Consideration of L5 Radiculopathy at Step Two

Plaintiff next submits that the ALJ erred in failing to consider plaintiff's L5 radiculopathy as a severe impairment at Step Two.  This argument is also without merit.  The ALJ explicitly included plaintiff's "degenerative disc disease" as a severe impairment at Step Two.  Degenerative disc disease is a general

term used to describe degenerative changes in spinal discs that can result in herniated discs and pressure on spinal nerve roots. See 3 Robert K. Ausman & Dean E. Snyder, Medical Library Lawyers Edition §§ 4:1, 4:38 (1989). Thus, the inclusion of degenerative disc disease at Step Two was sufficient to incorporate plaintiff's back and associated leg conditions, including L5 radiculopathy, into the disability analysis. Moreover, I note that plaintiff's back and associated leg impairments were considered and incorporated into the RFC, rendering any error in this respect harmless. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

III. **Consideration of Record Evidence**

    A.    **Plaintiff's Testimony**

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. Id. at 1281.

If an ALJ finds that the claimant's testimony regarding her subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is

unpersuasive." <u>Morgan v. Comm'r Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, plaintiff testified that she stopped working as a caregiver because she began experiencing pain and swelling in her legs, and that her legs would "give out" without warning. Tr. 51. Plaintiff reported that she has no trouble with personal needs, including bathing, dressing herself, and does not have any problems driving. Tr. 54. Plaintiff reported that she can cook simple meals and do dishes, although she must take breaks. Tr. 54. Plaintiff stated that her mother checks in with her daily, and comes over three times per week to help with plaintiff's children and around the house. Tr. 64. When plaintiff goes to the grocery store, she reported that somebody accompanies her and she uses a motorized scooter. Tr. 55. Plaintiff stated that she attempted to take classes at a community college, but that she had to stop because she "[c]ouldn't focus, couldn't keep up." Tr. 69.

Plaintiff testified that she could lift a gallon of milk if it was level with her and she did not have to carry it any distance, but could not lift a 24-pack of soda. Id. Plaintiff testified that she can only walk 20 feet before requiring rest because her legs go numb, and that she can stand for 10 minutes and sit for 15 minutes before requiring a change in position. Tr. 56. Plaintiff noted that hand tremors cause her to have difficulty holding items, such as a fork or pencil, in her hands. Tr. 57.

As to her mental limitations, plaintiff testified that her depression and anxiety cause her difficulty motivating to begin a day or complete household chores, and that she becomes overwhelmed in a group setting and has flashbacks to past abuse. Tr. 59. Plaintiff reported that her medications interfere with her memory, and that she has difficulty retaining information that she reads. Tr. 60-61. Plaintiff testified that her mental health conditions interfere with her sleep, as she only sleeps one to three hours per night because her mind "seems to like to race." Tr. 70. As to drug use, plaintiff reported that until October 2010 she smoked "a bowl [of marijuana] a night." Tr. 61-62. With respect to assistive devices, plaintiff testified that she has a walker with a seat on it that she originally procured herself, but was later prescribed by a doctor. Tr. 62. As a child, plaintiff reported that she suffered petit mal seizures which plaintiff suggested she

still experienced, causing her to "lose track of time and space out." Tr. 63.

In her most recent Adult Function Report, plaintiff stated that she makes breakfast, lunch, and dinner for her children, goes to the doctor once per week for an injection, and sees her therapist, Vivian Bliss, for posttraumatic stress disorder, anxiety, and "manic depression." Tr. 229. Plaintiff reported that she must climb or descend stairs twelve times per day because she lives in a townhouse, and that she uses a walker which "seems to help some," but still has difficulty cleaning the house, doing dishes, laundry, shopping, and picking up her son. Id. As to personal care, plaintiff reported that she requires her daughter's assistance to get dressed, and must hold onto [her] walker" to dress herself. Tr. 230. Plaintiff reported she has difficulty getting out of the bath tub, often needs her daughter's help washing her hair, can only shave her legs without pain if she is sitting in the bath, and can't bake or cook a regular meal. Id. Plaintiff additionally reported requiring the help of her children to get to the bathroom. Tr. 231.

Plaintiff checked that her conditions affect her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, use her hands, and get along with others. Tr. 234. Plaintiff reported that her poor memory interferes with her ability

11 - OPINION AND ORDER

to follow spoken instructions.  Id.  Plaintiff reported that if she
is under "any amount of stress . . . [her] brain shuts down."  Tr.
235.

     As to activities outside the home, plaintiff reported that she
can drive, "[b]ut only short distances, otherwise [her] back starts
hurting, tingling, and feeling like [she is] going to fall because
[her] legs are weak."  Tr. 232.  When plaintiff goes shopping with
her children, she stated it can take "[six] hours or so."  Id.
Plaintiff wrote that she used to enjoy swimming, camping, and
horseback riding, but it has been difficult to do those things
since her conditions began.  Tr. 233.

     The ALJ discredited plaintiff's testimony because it was
inconsistent with activities she reported elsewhere in the record,
plaintiff exhibited drug-seeking behavior, there is evidence in the
record of plaintiff exaggerating her symptoms, and the extent of
plaintiff's alleged physical limitations were not supported by
objective medical evidence.  I conclude that these reasons together
amount to clear and convincing reasons for rejecting plaintiff's
testimony.

     The ALJ reasonably found that plaintiff's allegations of very
significant limitations in her daily functioning were inconsistent
with other reports throughout the record.  As the ALJ noted,
plaintiff reported several times throughout the record that she was
working out at a gym.  Tr. 501, 505, 507, 631, 1080.  The ALJ

reasonably found that this was inconsistent with the very significant physical limitations alleged by plaintiff. Moreover, on February 23, 2010, plaintiff reported that she hurt her hand when "she was chopping wood today and the ax handle hit her hand." Tr. 929. The ALJ reasonably found that plaintiff using an ax to chop wood was inconsistent with plaintiff's testimony of significant lifting and handling limitations. The ALJ reasonably discredited plaintiff's testimony in part on this basis.

The ALJ also properly found that plaintiff exhibited drug-seeking behavior and discredited her testimony on that basis. An ALJ may discredit a claimant's testimony because the claimant demonstrated drug-seeking behavior. Edlund, 253 F.3d at 1157. The ALJ specifically noted that on October 26, 2009, plaintiff reported that her prescription narcotics were helping her symptoms, but requested an increased dose. Tr. 734. Less than one month later, however, she was cited for delivery of a controlled substance as a result of selling her prescribed oxycodone. Tr. 1007. As the ALJ also noted, plaintiff was terminated from Ms. Slind-Hull's practice because she violated her pain contract. Tr. 943. Finally, the ALJ properly cited plaintiff's therapist's repeated notes that plaintiff "appears to be self medicating for emotions not pain and anxiety." Tr. 1139, 1143, 1144, 1150, 1151, 1152. The ALJ reasonably cited plaintiff's demonstration of drug-seeking behavior as a reason to discredit her testimony.

The ALJ's rejection of plaintiff's testimony because the record contains evidence of plaintiff exaggerating her symptoms is also amply supported by the record. The ALJ cited numerous instances that she reasonably concluded suggest symptom exaggeration. On August 27, 2006, plaintiff reported to emergency room physicians that "'she had blown out her disk,'" despite, in reality, only having "a very small protrusion with no evidence of any nerve impingement." Tr. 490. At a January 29, 2008 evaluation, plaintiff reported symptoms that Paul S. Stoltzfus, Psy.D., characterized as "greatly exaggerated in contrast to her presentation during the interview." Tr. 427. Similarly, Dr. Stoltzfus noted during an examination the following year that plaintiff "appeared to be significantly exaggerating her symptoms" after completing the same questionnaire she had the previous year. Tr. 667.

The ALJ also noted that plaintiff sought and received the prescription of a walker without any medical need for one. After a physical examination, David Stenstrom, M.D., noted that plaintiff's walker was not "[m]edically necessary based on an objective exam findings." Tr. 680. Moreover, on November 9, 2007, Steve X. Truong, M.D., noted that despite presenting with a walker, plaintiff was "able to take several steps without the use of her walker." Tr. 416. Moreover, as discussed in further detail below, plaintiff lacked objective findings that would suggest impairment

to the extent of requiring the use of a walker, and displayed inconsistency in her gait. Finally, the ALJ noted that after her 2009 physical examination, Dr. Stenstrom concluded that "no physical diagnoses are present with this claimant" and found no physical functional limitations. Tr. 682.

The ALJ also cited plaintiff's inconsistency in testing as evidence of exaggeration of symptoms. Indeed, as the ALJ noted, plaintiff demonstrated variable gait characteristics, sometimes presenting with an antalgic gait, sometimes with a normal gait, sometimes with the assistance of a walker, and sometimes under her own power. E.g., Tr. 333 (normal gait), 367 (slightly antalgic gait), 399 (ambulating without any difficulty without walker or cane), 572 (gait was "stooped and antalgic bilaterally"), 739 (antalgic gait bilaterally), 892 (balance and gait intact). Moreover, as the ALJ also noted, plaintiff demonstrated inconsistent results on the straight leg raise test. Compare Tr. 366, 376, 378, 387, 399, 432 (positive bilaterally), with Tr. 362, 367, 368, 369, 415, 419, 441, 593 (negative bilaterally), and Tr. 372, 373 (positive on right only).

Finally, the ALJ also noted that plaintiff demonstrated inconsistent mental health testing results. For example, in the 2008 examination with Dr. Stoltzfus, plaintiff correctly spelled "world" backwards and successfully calculated "seven times eight" and "two times twenty four," whereas in the August, 2009

examination she could not complete any of those tasks.  Tr. 427, 669.  At her October, 2009 physical evaluation with Dr. Stenstrom, plaintiff successfully spelled "world" both forward and backward, successfully calculated "five times three," but unsuccessfully calculated "twenty-six minus seven," and "refused" to calculate "twenty-eight divided by two" and "twenty-nine plus eleven."  Tr. 679.  One month later, in November of 2009, plaintiff again failed to spell "world" backwards, despite successfully doing so in August and October of that year.  Tr. 708.  The ALJ reasonably discredited plaintiff's testimony because there was evidence she exaggerated her symptoms.

Finally, the ALJ rejected plaintiff's testimony because her allegations of severe back and associated leg limitations were not supported by objective testing in the record.  Imaging of plaintiff's back consistently produced mild findings.  E.g., Tr. 353, 354, 674.  A nerve conduction study was "within normal limits bilaterally," and while a needle EMG study showed "some chronic denervation in the distal L5 muscles," there was "no evidence of active denervation."  Tr. 335.  The ALJ reasonably found that objective medical evidence did not support plaintiff's allegations of severe back and associated leg symptoms.  I conclude that the above reasons, taken together, constitute clear and convincing reasons for rejecting plaintiff's testimony.

///

16 - OPINION AND ORDER

**B.    Medical Testimony**

Citing a series of chart notes and letters to various social service organizations from Ms. Slind-Hull, plaintiff argues that the ALJ erroneously rejected Ms. Slind-Hull's "opinion". See Tr. 472, 572, 714, 723, 724.  None of the letters were submitted for the purpose of aiding the disability determination.  As an initial matter, I note that because these record entries were not medical testimony provided to the Social Security Administration for the purpose of aiding in the disability determination, the ALJ was not required to give them any special consideration.  Rather, so long as the ALJ's decision was supported by substantial evidence in the record as a whole, including Ms. Slind-Hull's notes, the Commissioner's decision must be affirmed.  I conclude there is nothing in the cited entries from Ms. Slind-Hull that deprive the ALJ's decision of the support of substantial evidence.

Even if Ms. Slind-Hull's record entries were considered medical testimony, the ALJ properly weighed such testimony.  As a nurse practitioner, Ms. Slind-Hull is an "other source" whose opinion may be rejected if the ALJ cites reasons germane to the witness.  See 20 C.F.R. § 404.1513(d); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  The ALJ rejected Ms. Slind-Hull's notes because they were based on plaintiff's subjective self-reports and were unsupported by objective findings.  Tr. 34.

Indeed, a review of Ms. Slind-Hull's chart notes demonstrates that she relied extensively on plaintiff's self-reports, which the ALJ reasonably found unreliable, and were contradicted by objective medical findings.  Notably, Ms. Slind-Hull noted on December 1, 2008, that plaintiff has a history of "severe degenerative disc disease," despite imaging in the record that showed, at most, mild degenerative changes.  Tr. 580.  Moreover, it appears Ms. Slind-Hull prescribed plaintiff's walker based on plaintiff's self-reporting, as it was prescribed after plaintiff reported "that she is afraid at times utilizing her current walker that her legs will give out and she will fall."  Tr. 571-72.  The ALJ reasonably rejected Ms. Slind-Hull's "opinion" because it was based on plaintiff's self-reporting and unsupported by objective medical evidence.

### C.    Lay Testimony

Plaintiff next argues that the ALJ improperly rejected the lay testimony of Arvel Ray Monroe and Jerrie Lynn Elstun without discussion.  Lay testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that an ALJ must take into account.  Molina, 674 F.3d at 1114.  To discount lay witness testimony, the ALJ must give reasons that are germane to the witness.  Id.

The ALJ's failure to discuss the lay witness testimony was error.  Such error may be harmless, however, if the lay witnesses

did not describe any limitations beyond those described by the plaintiff, and the ALJ provided "well-supported, clear and convincing reasons" to reject the plaintiff's testimony that similarly apply to the lay testimony.  See Molina, 674 F.3d at 1122.  I conclude that the ALJ's error in failing to discuss the lay testimony was harmless.

As the parties agree, the lay testimony was substantively very similar to plaintiff's allegations.  Moreover, many of the ALJ's reasons for rejecting plaintiff's testimony apply with equal force to the lay testimony.  Just as plaintiff's testimony of severe back and leg limitations was inconsistent with objective medical evidence showing mild impairments, the lay witness testimony of similar allegations is also contradicted by the objective medical evidence.  Similarly, just as plaintiff's allegations of significant limitations were belied by her frequent statements that she exercised at a gym and her report that she injured her hand chopping wood with an ax, the lay witness allegations are similarly contradicted by plaintiff's admitted activities.  These reasons are sufficient reasons to reject the lay testimony.  The ALJ's error in failing to discuss the lay testimony was harmless.

## D.    The Vocational Rehabilitation Services Evaluation

Plaintiff argues that the ALJ erred in failing to expressly address the VRS's categorization of plaintiff as "Most Significantly Disabled" and its opinion of certain impediments to

19 - OPINION AND ORDER

plaintiff's employment. Tr. 812-813.  Disability determinations by other governmental agencies are not binding on the Commissioner, but "cannot be ignored and must be considered."   SSR 06-03p, <u>available at</u> 2006 WL 2329939, at *6.  The ALJ "should explain the consideration given to these decisions" in the opinion.  <u>Id.</u> at *7.

The ALJ clearly erred in considering the VRS disability determination because she failed to explain the consideration it was given.  I cannot conclude that such error was harmless, as not all of the findings in the VRS determination were accounted for - either incorporated into the RFC or expressly rejected - in the ALJ's decision.

IV.  **Miscellaneous Alleged Errors in the RFC**

Plaintiff next argues that the ALJ erred in formulating the RFC because she improperly considered the record, failed to consider plaintiff's likely poor attendance due to medical appointments, improperly limited plaintiff to "unskilled work" in the vocational hypothetical, and failed to incorporate Step Three limitations relating to plaintiff's ability to engage in complex work and concentration, persistence, and pace into the RFC.  These arguments are without merit.

Plaintiff's argument that the ALJ failed to properly consider the record is merely a restatement of arguments addressed above, and does not merit further discussion.  Plaintiff's next argument, that the ALJ failed to limit plaintiff's work attendance due to

medical appointments, is meritless.  There is nothing in the record indicating plaintiff could not schedule medical appointments during non-working hours or on non-working days.

Plaintiff's argument that the ALJ erroneously limited plaintiff to "unskilled work" because such a limitation "has no place in the function-by-function quantification" is also meritless.  A limitation to "unskilled work" is clearly a valid finding in an ALJ's determination of the plaintiff's functional capacity in the workplace, as it is a determination of the degree of complexity of work the ALJ concludes the claimant can perform.

I also reject plaintiff's argument that the ALJ failed to incorporate limitations found at Step Three into the RFC.  The ALJ's complexity limitation at Step Three is reasonably accommodated by the ALJ's limitation of plaintiff to unskilled work.  Moreover, the concentration, persistence, and pace limitation found at Step Three is also reasonably accommodated by the limitation to unskilled work because such limitation is reasonably consistent with the medical evidence.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).  In making the finding of moderate limitations in concentration, persistence, and pace, the ALJ reasonably noted that such limitation was inconsistently present throughout the record, and largely based upon plaintiff's occasional presentation with poor memory.  Tr. 25.  It was reasonable, then, for the ALJ to rely on

the limitation to unskilled work, and its necessarily contemplated simpler tasks, to accommodate the ALJ's Step Three finding on plaintiff's concentration, persistence, and pace limitations.

## V.   **Step Five Finding**

Plaintiff finally argues that the ALJ erred in her Step Five finding because the ALJ noted at Step Two that plaintiff's severe impairments "more than minimally impact her ability to engage in complex work requiring her to follow detailed instructions," yet found that plaintiff could perform jobs greater than GED Level One. Plaintiff argues that the Step Two finding was inconsistent with the Step Five finding because any job at GED Level 2 or above requires plaintiff to at least "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." Dictionary of Occupational Titles, App. C § III.  Thus, plaintiff argues, under the ALJ's Step Two finding, plaintiff could not perform the jobs of Mail Clerk and Microfilm Document Preparer because they required greater than GED Level One.  I disagree.

The finding that certain abilities are "more than minimally affected" by the claimant's severe impairments at Step Two is not equivalent to limitations listed in the RFC.  Any limitation plaintiff has in following instructions was adequately accounted for by the "unskilled work" limitation in the RFC.  The VE testified, and the ALJ found, that each of the jobs cited by the ALJ qualified as "unskilled work."  The ALJ properly relied on the

cited jobs to meet the Commissioner's burden at Step Five.  Even if plaintiff were correct, however, such error would be harmless as the 4,347 local and 363,614 national jobs associated with Conveyor Line Bakery Worker are jobs that exist in significant numbers in the national economy.  See Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1478-79 (9th Cir. 1989); Yelovich v. Colvin, No. 11-36071, 2013 WL 3216042, at *1 (9th Cir. June 27, 2013). With the exception of the error in consideration of the VRS evaluation, the ALJ's Step Five finding was proper.

**VI.  Remand**

After finding the ALJ erred, this court has discretion to remand for further proceedings or for immediate payment of benefits.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  Id.  The court should grant an immediate award of benefits when:

///

///

///

23 - OPINION AND ORDER

>(1) the ALJ has failed to provide legally sufficient
>reasons for rejecting such evidence, (2) there are no
>outstanding issues that must be resolved before a
>determination of disability can be made, and (3) it is
>clear from the record that the ALJ would be required to
>find the claimant disabled were such evidence credited.

Id. (quoting Smolen, 80 F.3d at 1292). Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

On this record, there remain outstanding issues to be resolved and it is not clear that the ALJ would be required to find plaintiff disabled if the functional limitations in the VRS disability determination were credited. Accordingly, on remand, pursuant to the Commissioner's regulations, the ALJ must consider and expressly accept or reject the findings in the VRS disability determination. If the ALJ accepts the VRS findings, she must determine what effect the findings have on the RFC, seeking additional VE testimony, if necessary. If the ALJ chooses to reject the VRS findings, she must provide legally sufficient reasons for doing so.

///

///

///

///

///

24 – OPINION AND ORDER

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this __9__ day of October, 2013.

Malcolm F. Marsh
United States District Judge